DISTRICT OF OREGON
**FILED**
**August 18, 2026**
**Clerk, U.S. Bankruptcy Court**

Below is an opinion of the court.

KATHRYN F. EVANS
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF OREGON

In re

Jerron Andrew Smith,

Debtor.

Case No. 25-61287-kfe7

MEMORANDUM DECISION ON DEBTOR'S MOTION FOR SANCTIONS FOR WILLFUL VIOLATION OF THE AUTOMATIC STAY

This matter came before the Court on Jerron Andrew Smith's (the "**Debtor**") *Motion for Sanctions for Willful Violation of Automatic Stay* (the "**Sanctions Motion**")[1] filed on April 13, 2026, seeking sanctions against Capital One Auto Finance ("**Capital One**"), as well as Capital One's objections thereto (collectively, the "**Responses**")[2] and the Debtor's various replies (collectively, the "**Replies**")[3]. The Sanctions Motion requests the Court grant monetary sanctions against Capital One pursuant to 11 U.S.C. § 362(k) for the post-petition repossession and retention of the Debtor's vehicle. An evidentiary hearing on the matter was held on July 15, 2026, at which

[1] ECF No. 42
[2] ECF No. 46 and 65.
[3] ECF No. 48, 49, and 60.

time the parties presented evidence. Based on the pleadings, arguments, testimony offered, exhibits admitted into evidence and the record before the Court, the Court now issues its decision.

## I. Jurisdiction

This is a core proceeding over which this Court has jurisdiction and authority to enter a final judgment in accordance with 28 U.S.C. §§ 1334 and 157.

## II. Background

On September 14, 2023, the Debtor entered into a Retail Installment Contract (the "**Vehicle Contract**") with Capital One for the purchase of a 2024 Chevrolet Trex (the "**Vehicle**"). Capital One Exhibit C, ECF No. 64.

On May 8, 2025, without the assistance of counsel, the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. Capital One, Exhibit A, ECF No. 64. Concurrently with the petition, the Debtor filed a *Statement of Intention for Individuals Filing Under Chapter 7* wherein he noted his intent to surrender the Vehicle. *Id.* at 58.

On May 9, 2025, the Debtor telephoned Capital One after he received an email from them stating their intent to repossess the Vehicle. During that telephone call he provided Capital One with his bankruptcy case number, and in response, Capital One's representative advised him that they had contacted the tow truck dispatcher and cancelled the dispatch to repossess the Vehicle. Notwithstanding the alleged cancellation, on the morning of May 13, 2025, when the Debtor went to drive his children to school, he realized his Vehicle had been repossessed.

Shortly thereafter, the Debtor received a letter dated May 14, 2025, stating that Capital One had possession of the Vehicle and would be selling it sometime after May 29, 2025. Debtor Exhibit 2, ECF No. 67. On or about May 20, 2025, the Debtor again telephoned Capital One and spoke to someone in their bankruptcy department. Capital One's bankruptcy department representative

advised the Debtor that they were under the impression he was ready to pick up the Vehicle. The Capital One representative stated that it would take approximately two weeks to return the Vehicle since it had been relocated to an auction lot in Sacramento. The Capital One representative advised the Debtor that he would need to schedule an appointment with the auction lot in order to get the Vehicle back. Debtor then testified he traveled to Sacramento and picked up the Vehicle. The date he retrieved the Vehicle was May 29, 2025.

On July 16, 2025, Capital One sent the Debtor a letter stating:

> We previously sent you a 'Notice of Our Plan to Sell Property' dated 5/14/2025. Please disregard that earlier notice, as it was sent in error.

Debtor Exhibit 3, ECF No. 67. On September 9, 2025, Capital One sent the Debtor further correspondence stating:

> [W]e determined that the repossession of your vehicle on May 13, 2025, was eligible for reversal. We returned your vehicle on May 29, 2025.

Debtor Exhibit 1, ECF No. 61. The letter went on to note that Capital One would compensate the Debtor $525 and had "credited/ waived/ refunded (as applicable) the repossession fee associated with this reversal decision." *Id.* Notably, however, the Debtor testified he never received the $525 check. When asked why the Debtor waited so long after the harm to bring a motion for sanctions, the Debtor responded that he had been experiencing homelessness and was not able to focus on anything other than procuring housing for a bit and thus was not able to pursue this relief until his life had stabilized.

Although the Debtor requested damages in the Sanctions Motion, and provided information related thereto in his pleadings, no testimony or evidence was presented at the July 15, 2026 hearing regarding his actual damages.

## III. Analysis

"Congress and the Ninth Circuit Court of Appeals have made it clear that a violation of the automatic stay is a very serious matter." *In re Achterberg,* 573 B.R. 819, 829 (Bankr. E.D. Cal. 2017); *see also Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d 581, 585 (9th Cir. 1993). The stay is broad and immediately freezes and nullifies all post-petition actions against the debtor. *Hillis Motors, Inc. v. Hawaii Auto. Dealers' Ass'n,* 997 F.2d at 585. "As one of the fundamental principles girding the Bankruptcy Code, 'the automatic stay requires a creditor to maintain the *status quo ante* and to remediate acts taken in ignorance of the stay.'" *In re Achterberg*, 573 B.R. at 830 *quoting Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 343 (B.A.P. 9th Cir. 1994). Specifically, § 362(a) imposes a stay applicable to all entities enjoining all of the following:

> (1) the commencement or continuation . . . of . . . a judicial, administrative, or other action . . . against the debtor that was or could have been commenced before the commencement of the case . . . ;
> …
> (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; …
> [and]
> (6) any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 362(a).

Applying the above to the facts herein, Capital One violated the automatic stay on May 13, 2025, when they repossessed the Vehicle and relocated it to an auction lot in Sacramento, California for purposes of satisfying the Debtor's pre-petition obligations under the Vehicle Contract. Having established a violation of the automatic stay, the next issue is whether the Debtor is entitled to damages under 11 U.S.C. § 362(k).

Section 362(k)(1) was drafted with the intention of deterring creditors from violating the stay and providing redress to debtors when the stay is violated. Section 362(k)(1) provides that "an individual injured by any *willful* violation of a stay provided by [§ 362] shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." *In re Altamirano*, No. 4:20-BK-11836-BMW, 2022 WL 18635160, at *5 (Bankr. D. Ariz. Feb. 2, 2022) *quoting* 11 U.S.C. § 362(k) (emphasis added). The Ninth Circuit has found there are two elements to establish a stay violation was "willful" for purposes of § 362(k): first, the debtor must show the creditor knew of the existence of the stay and second, the debtor must show the creditor's actions were intentional. *Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1215 (9th Cir. 2002).

As to the first element, knowledge, a "party with knowledge of bankruptcy proceedings is charged with knowledge of the automatic stay." *In re Altamirano*, 2022 WL 18635160, at *5 *quoting In re Dyer*, 322 F.3d 1178, 1191 (9th Cir. 2003). The notice given to the creditor does not need to be an official court-issued document and informal notices are sufficient. *In re Altamirano*, 2022 WL 18635160, at *5, *citing In re Moon,* No. 13-BK-12466-MKN, 2021 WL 62629, at *8 (B.A.P. 9th Cir. Jan. 7, 2021), *appeal dismissed*, No. 21-60006, 2021 WL 3509163 (9th Cir. Apr. 19, 2021). Here, the Debtor's unrefuted testimony was that on May 9, 2025, after receiving notice that his vehicle would be repossessed, the Debtor called Capital One and advised Capital One's representative that he had filed for bankruptcy and provided that representative with his bankruptcy case number. Upon hearing that, the representative transferred him to another Capital One representative who advised the Debtor that the repossession had been cancelled. As such, the Debtor has met his burden of showing that Capital One had knowledge of his bankruptcy as of May 9, 2025, which was five days prior to Capital One repossessing the Vehicle.

As to the second element, whether the act was intentional; a Debtor does not need to establish a creditor had the specific intent to violate the stay: "[t]o the contrary, a good faith belief that the stay is not being violated 'is not relevant to whether the act was 'willful' or whether compensation must be awarded.'" *In re Campion*, 294 B.R. 313, 316 (B.A.P. 9th Cir. 2003) *quoting Johnston Envtl. Corp. v. Knight (In re Goodman),* 991 F.2d 613, 618 (9th Cir. 1993). Several courts have found that when a creditor with knowledge of the bankruptcy repossesses a vehicle, that conduct constitutes intentional and willful conduct sufficient to trigger liability under 11 U.S.C. § 362(k). *See e.g. In re Calloway*, No. 08-18561-SSC, 2009 WL 1564207 (Bankr. D. Ariz. May 26, 2009) (finding creditors repossession of the debtor's vehicle post-petition notwithstanding the fact the debtor filed a statement to surrender the vehicle under § 521 to be a willful violation of the stay warranting relief under § 362(k)); *In re Dawson,* 665 B.R. 796, 804 (Bankr. S.D. Ohio 2025) (finding repossession of debtor's vehicle to be a willful violation of the stay); *In re Adams,* 516 B.R. 361, 369 (Bankr. S.D. Miss. 2014) (finding creditor's repossession and retention of debtor's vehicle constituted a willful violation of the stay). Here, the Court finds the intentional repossession of the Vehicle on May 13, 2025, after Capital One received notice of the bankruptcy case on May 9, 2025, to constitute an intentionally willful act warranting an award of actual damages under 11 U.S.C. § 362(k).

The Debtor bears the burden of showing actual damages, however, "there is no category of violations so minor that it automatically negates the mandatory language of § 362(k)." *In re Koeberer*, 632 B.R. 680, 690 (B.A.P. 9th Cir. 2021). Here, the Debtor did state during closing arguments that he had rented a hotel and driven to Sacramento to retrieve the Vehicle but that presentation was made after the close of the evidence and no documentation regarding those expenses were produced to satisfy his burden of demonstrating actual damages. However, while

the Debtor did not satisfy his burden of establishing he had incurred actual damages, the Court retains the discretion to award punitive damages under § 362(k)(1) "in appropriate circumstances" regardless of whether those damages were expressly requested. *In re Altamirano*, 2022 WL 18635160, at *9-10. Such an award may be warranted in circumstances where the creditor fails to comply with their affirmative duty to promptly remedy post-petition conduct which violates the automatic stay. *See In re Dyer*, 322 F.3d at 1192 supra, (citing *Calif. Employment Dev. Dep't v. Taxel (In re Del Mission)*, 98 F.3d 1147, 1155 (9th Cir. 1996)).[4]

The circumstances of this case warrant an award of sanctions because Capital One materially failed to satisfy its affirmative duty to promptly remedy their stay violation. Specifically, after learning of the existence of the stay from the Debtor, and after advising the Debtor the repossession would be cancelled, Capital One nonetheless failed to control and supervise its agents who repossessed the Vehicle five days later. Then, after learning of the violation it advised the Debtor it would take two weeks to return the vehicle with no offer of any substitute vehicle while the return was being fulfilled. The evidence demonstrated that Capital One showed absolutely no urgency to remedy the situation which it had created by its post-petition violation of the automatic stay. All this infers a willful business structure for which counsel's proffered excuses of "inadvertent error" and "administrative delay" is wholly insufficient. Capital One put no person on the witness stand to explain its business practices or justify its delays in this case. The Court is not persuaded that Capital One's business structure justified the two-week delay in returning the Vehicle to the Debtor. These facts lead to the conclusion that Capital One did not

---

[4] The Court is cognizant that the mere continued retention of a vehicle which had been rightfully repossessed pre-petition without a request for turnover is insufficient to warrant relief under § 362(k) as set forth in *City of Chicago, Illinois v. Fulton*, 592 U.S. 154 (2021). However, the *Fulton* decision is inapplicable to this case because the repossession took place post-petition notwithstanding the creditor's actual knowledge of the existence of the stay.

take measures in a reasonable amount of time to remedy the violation of the stay or to immediately turnover property of the estate as Capital One was required to do. These errors and business practices have real life impacts on debtors who need their vehicles, and the Court is concerned these business practices are likely causing harm to other debtors who have not taken the time to come before the Court.

In order to award punitive damages, the Court must find "some showing of reckless or callous disregard for the law or rights of others." *In re Altamirano*, 2022 WL 18635160, at *9 *quoting In re Snowden,* 769 F,3d 651, 657 (9th Cir. 2014) and *In re Bloom,* 875 F. 2d 224, 228 (9th Cir. 1989)). When considering an award of punitive damages, Courts in this Circuit generally consider the following factors: "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases." *In re Altamirano*, 2022 WL 18635160, at *9 *quoting In re Moon,* 2021 WL 62629 at *6; *State Farm Mut. Automobile Ins. Co. v. Campbell*, 538 U.S. 408, 418, 123 S.Ct. 1513, 1515, 155 L.Ed.2d 585 (2003); *BMW of N. Am. Inc. v. Gore,* 517 U.S. 559, 575, 116 S.Ct. 1589, 1599, 134 L.Ed.2d 809 (1996). As set forth below, these factors weigh in favor of assessing punitive damage in the amount of $1,500.

As to the first factor, "[t]he reprehensibility of the creditor's conduct is assessed in light of evidence of the creditor's indifference to or reckless disregard for the rights of others, whether the target of the conduct was financially vulnerable and whether the conduct involved repeated actions." *In re Franklin*, 614 B.R. 534, 550 (Bankr. M.D.N.C. 2020) (internal citations and quotation marks omitted). Here, Capital One is a sophisticated creditor in the business of automobile financing with substantial resources to devote to ensuring its practices and procedures

are compliant with the bankruptcy code. Notwithstanding that, Capital One's actions in repossessing the Vehicle post-petition after being advised of the existence of the automatic stay, and after advising the Debtor that the repossession had been cancelled, demonstrate a reckless disregard for the Debtor's rights. That reckless disregard when weighed against the considerable financial vulnerability of the individuals whose vehicles are subject to repossession, warrants a finding that the first factor weighs in favor of awarding punitive damages in order to deter Capital One from engaging in similar conduct in the future.

As to the second factor, the disparate ratio between punitive and compensatory damages, the bankruptcy Court in *In re Franklin* aptly noted:

> [w]here actual damages are low, the ratio of actual damages to punitive damages has less significance because a simple multiple of actual damages would utterly fail to serve the traditional purposes underlying an award of punitive damages, which are to punish and deter. The amount awarded should deter both the creditor and others and should motivate the creditor to devote the resources necessary to correct the deficiencies in its bankruptcy procedures.

*In re Franklin*, 614 B.R. at 550 (internal quotation marks and citations omitted). Applying this reasoning to the facts herein, the Debtor, who was unrepresented by Counsel, argued at closing that he suffered damages, but failed to provide specifics regarding the nature of his damages during his evidentiary presentation. As such, a multiplier of his actual damages would have absolutely no deterrent impact on Capital One's activities going forward. Therefore, given the circumstances of this case, the Court accords very little weight to the second factor.

As to the third factor, the difference between the punitive damage award and the civil penalties authorized or imposed in comparable cases, other Courts faced with similar fact patterns have awarded punitive damages to debtors with the intent of deterring the creditor from repeating the improper conduct. *See e.g., In re Warren*, 532 B.R. 655, 667 (Bankr. D.S.C. 2015) (awarding

$11,597, comprised of $547 for loss of use of the Vehicle and improperly required payments, $500 for pain and suffering, $8,200 in attorney's fees and $2,000 in punitive damages when creditor repossessed the vehicle and delayed return of the vehicle for four days after receiving notice of the bankruptcy filing); *In re Adams*, 516 B.R. 361, 376 (Bankr. S.D. Miss. 2014) (awarding punitive damages of $6,600 when the creditor had notice of the automatic stay and repossessed the debtor's vehicle and held it for twenty-five days despite repeated requests for its return); *In re Cepero*, 226 B.R. 595 (Bankr. S.D. Ohio 1998) (awarding $1,832 in actual damages and $12,000 in punitive damages where creditor repossessed debtor's vehicle post-petition despite debtor's counsel leaving a voicemail for the creditor informing creditor of the bankruptcy filing); *In re Sauls*, Case No. 12-80094C-13D, 2012 WL 1224379, at *4-5 (Bankr. M.D.N.C. 2012) (awarding $2,630 in attorneys' fees and $3,500 in punitive damages when creditor, who received telephonic notice, service by mail of court documents evidencing the filing and actual notice from debtor, refused to return the car for over thirty days in violation of the automatic stay). Accordingly, the third factor also weighs in favor of awarding punitive damages against Capital One.

## IV. Conclusion

For the reasons set forth herein, the Court concludes that Capital One violated the automatic stay, when despite having actual notice of the existence of the automatic stay, it repossessed the Debtor's vehicle. While the Debtor failed to establish actual damages resulting from the violation, the Court finds Capital One's conduct in this matter warrants an award of punitive damages in the amount of $1,500.00. Capital One shall have fourteen days from the entry of the Court's judgment to pay all amounts to the Debtor.

These are the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52, made applicable to this proceeding by Federal Rules of Bankruptcy Procedure

9014(c) and 7052. They will not be separately stated, but they will be reduced to judgment separate from this memorandum.

###

cc: Jerron Andrew Smith
POB 111
Phoenix, OR 97535